Opinion
COLE, J.
The question in each of these cases is whether governmental conduct so misled the defendant as to prevent him or her from securing evidence potentially favorable to the defense, thereby depriving the defendant of the opportunity for a fair trial. In each matter the trial court thought that such was the situation and, acting under one or another of various legal theories, dismissed the action. The People appeal in each instance. Later in this opinion we discuss the particular facts of each case and apply to them the applicable general principles of law. We turn now to the common thread which runs among the cases.
In each case the defendant was charged with the misdemeanor offense of using and being under the influence of a controlled substance (an opiate) in violation of section 11550 of the Health and Safety Code. It is highly relevant, in the defense of such a case, for the defendant to prove his innocence through medical evidence that his body did not exhibit symptoms of such usage. Such evidence may consist of chemical analysis of a urine specimen taken within a limited time after the alleged date the offense was committed. It may also consist of testimony of a doctor concerning the results of a physical examination covering such matters as the presence or absence of scab marks on defendant’s limbs, body movements, gait, eye response and state of consciousness. It does not take medical school training or law enforcement experience to be aware that in time such symptoms disappear or fade away.[1]
Each defendant, while ultimately charged solely with the misdemean- or offense of using and being under the influence of an opiate, was told at the time of his or her arrest (and in some cases at the time of release *1042 from custody) that the charge was possession of a controlled substance (heroin), a felony, in violation of section 11350 of the Health and Safety Code. In contrast, to the charge of being under the influence of an opiate, evidence as to whether or not a person had used the substance at or shortly prior to the time of arrest is not necessarily relevant to the defense of a charge of possession. To defend against that charge, testimony as to the defendant’s physical condition need not be offered, either by the prosecution or the defense. One accused of the crime of possession has, at least in the abstract, no particular reason to attempt to secure evidence that he or she was free of physical symptoms of use on the date in question.
In each of the cases under consideration, no heroin or other controlled drug was seized at the time of the defendant’s arrest. Rather, defendants were booked, and told that they had been charged with possession of the substance. This booking occurred because of a policy of the Los Angeles Police Department,[2] to book all persons initially arrested for being under the influence of an opiate as being in “internal possession” of the substance and, therefore, subject to being booked as a felony suspect for violation of Health and Safety Code section 11350. However, the record does not show that any of the defendants were told that the “possession” with which they were charged was based on “internal possession.” In marked contrast to the policy of the Los Angeles Police Department, it is not the policy of the authority charged with filing felony offenses, the Los Angeles District Attorney, to file possession of an opiate charge against those who are only alleged to be “internally” in possession.[3]
The issue presented by the foregoing circumstances is whether defendants have been misled or lulled by government action to such an extent that trial court dismissal is warranted.
*1043 “[T]he law does not impose upon law enforcement agencies the requirement that they take the initiative, or even any affirmative action, in procuring the evidence deemed necessary to the defense of an accused. Rather it is the accused who must act to protect his interests, and it is only when he is denied an opportunity, reasonable under the circumstances, to procure a timely sample of his blood that he can properly claim a denial of due process . . In re Koehne (1960) 54 Cal.2d 757, 759 [8 Cal.Rptr. 435, 356 P.2d 179]; In re Newbern (1959) 175 Cal.App.2d 862, 866 [1 Cal.Rptr. 80, 78 A.L.R.2d 901], Each of these cases involved tests for alcohol contained in blood. The same principles, however, obviously apply to a determination whether a defendant is under the influence of an opiate.
Ordinarily, failing to tell a defendant of the precise charge he will ultimately face at the time of his arraignment does not result in prejudice. For most crimes, proof of the commission of the offense, and evidence necessary to raise a reasonable doubt, is not inexorably destroyed by the mere passage of time. As we have noted, however, the crime of being under the influence of a controlled substance is exceptional. In cases involving alcohol, the courts have recognized that a refusal to honor a defendant’s request for a medical examination for blood alcohol, conducted at defense expense, has been held to deprive the defendant of due process of law. (In re Martin (1962) 58 Cal.2d 509, 512 [24 Cal.Rptr. 833, 374 P.2d 801]; In re Newbern, supra, 175 Cal.App.2d at p. 866.) Obviously, there is no legal difference where the charge is that a defendant is under the influence of an opiate.
Whether the question is approached under due process principles or those relating to the denial of the right to speedy trial makes no difference. The question in each case is “. . . decided by the same approach, namely, balancing the effect of the delay on the defendant against any justification for the delay.” (Jones v. Superior Court (1970) 3 Cal.3d 734, 741, fn. 1 [91 Cal.Rptr. 578, 478 P.2d 10].)
It goes without saying that deliberate suppression of evidence by prosecuting authorities denies a defendant due process of law. (People v. Kiihoa (1960) 53 Cal.2d 748, 752 [3 Cal.Rptr. 1, 349 P.2d 673].) No evidence is presented in these cases that a defendant has been subjected to deliberate deception, or to thé wilful suppression of evidence material to a defense.
*1044 However, a defendant who is prejudiced by official delay is not required to show that it was intentional or malicious. The prejudicial effect of delay violates due process regardless of the intent of the governmental officials who cause it. Once delay and prejudice have been demonstrated, the burden shifts to the People to establish a legitimate justification for the delay.[4] (In re Martin, supra, 58 Cal.2d 509; Penney v. Superior Court (1972) 28 Cal.App.3d 941, 953 [105 Cal.Rptr. 162].)
In the Martin case a defendant, arrested for driving under the influence of alcohol, asked the officer to take him to a medical center near the point of arrest to be medically examined for blood alcohol. The officer refused, telling the defendant that he would be taken to jail for booking instead. Defendant was released within a short period of time after the booking. The court upheld the police refusal to take him to the medical center, stating that “. . . police officers are not required to take the initiative or even to assist in procuring evidence on behalf of the defendant which is deemed necessary to his defense . . . .” (58 Cal.2d at p. 512.) The same defendant, however, also produced evidence that after his release he was unable to obtain a private blood test because all of the laboratories were closed and because hospitals would give him a blood test only if authorized to do so by the Los Angeles Police Department which declined to állow them to give the test. With respect to these events the Supreme Court said:
“But in no event can duly constituted authority hamper or interfere with efforts on the part of an accused to obtain a sampling of his blood’ without denying to him due process of law. We are persuaded to such conclusion in any instance where the conduct of the authorities, whether through affirmative action or by the imposition of their rules and regulations, imposes any material obstacle in the path of the accused. Nor are we impressed that an accused, as perhaps in the instant case, might have reached his goal by pursuing a different course. It is sufficient if, in seeking to establish the fact of the alcoholic content of his blood, *1045 the authorities, by their actions or regulations, frustrate his reasonable efforts designed to produce probative evidence.
“In the instant case police involvement did not stop with petitioner’s release. The latter made a reasonable and sincere effort to obtain blood tests through two hospitals, at least one municipally owned, and was frustrated in that effort either because of regulations imposed by the authorities or because police department permission was withheld. Thus, by a passive act of refusal the authorities were able to frustrate the efforts of petitioner to obtain evidence necessary for his defense.
“A refusal by the police under the foregoing circumstances is analogous to a suppression of evidence and violative of due process of law.” (58 Cal.2d at pp. 512-513.)
And, in Penney v. Superior Court, supra, the court said: “The requirement of a legitimate reason for the prosecutorial delay cannot be met simply by showing an absence of deliberate, purposeful or oppressive police conduct.” (28 Cal.App.3d at p. 953.)
Speaking generally, the practices at issue here are certainly susceptible of. frustrating a defendant in the production of favorable defense evidence. If the defendant is told that he or she is charged with an offense whose nature makes irrelevant evidence as to the defendant’s physical condition, there is no incentive on the latter’s part to procure such evidence. When the defendant is, instead, later charged with an offense where such evidence is relevant, prejudice has resulted if he has relied on the wrongful information.
Speaking in a case where the defendant knew that he was suspected of committing a narcotics offense, but where a long delay ensued before he was arrested, the Supreme Court said in Jones v. Superior Court, supra, 3 Cal.3d 734 at pages 740-741:
“Although petitioner knew in June 1968 that the police suspected him of a narcotics offense, he did not know when or how they believed the crime was committed, and since at this stage of the proceedings the case has not been tried and he must be presumed to be innocent, we cannot assume that he knew the details of the crime charged from his commission of it. He was under no legal obligation to go to the police station, and his failure to appear cannot justify an otherwise unreason *1046 able delay in apprehending him. Indeed the prejudice to his ability to reconstruct his activities at some unknown date before he knew he was suspected of some offense may well have been compounded by a false-sense of security....”
Similarly here, speaking generally, “a false sense of security” might have prejudiced the defendants. They were told that they were charged with possession of a controlled substance. Faced only with that charge, and, assuming for the moment that there is no reason for a particular defendant to know that he or she is suspected of, or might be charged with, the offense of being under the influence of a controlled substance,[5] there is no reason for a defendant to attempt to establish a defense by asking that he or she be permitted to give a urine sample.
Thus, the police conduct in such a situation effectively prevents a defendant from securing evidence which may be important to the defense. In other areas of the law, the courts have recently and increasingly recognized that the People are under an obligation to take steps, not only to see that potential defense evidence is preserved, and is not lost by destruction, the passage of time, or other reasons, (e.g., People v. Hitch (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361], preservation of results of breathalyzer tests) but also affirmatively to secure evidence potentially helpful to a defendant, (People v. Goliday (1973) 8 Cal.3d 771 [106 Cal.Rptr. 113, 505 P.2d 537], duty of police to take reasonable steps to obtain information about informants so that the defense may locate them; Eleazer v. Superior Court (1970) 1 Cal.3d 847 [83 Cal.Rptr. 586, 464 P.2d 42], same. Cf. In re Ferguson (1971) 5 Cal.3d 525 [96 Cal.Rptr. 594, 487 P.2d 1234], failure to disclose arrest record of victim.)
There is no doubt that the police conduct here may have prejudiced the defendants.
But, it may quite properly be asked, what about the statements in the Martin (supra, 58 Cal.2d 509), Newbern (supra, 175 Cal.App.2d 862), and Koehne (supra, 54 Cal.2d 757) cases that officers are not required to take the initiative or assist defendants in procuring evidence? The answer, we think, is that in each of those cases the defendant knew the nature of the charge against him, and that a test for his blood alcohol content might be helpful. In Newbern the defendant knew that he was charged with being *1047 drunk and asked for a blood test at his own expense. (175 Cal.App.2d at p. 864.) In Koehne the defendant was arrested three times for being drunk in a public place. Each time, he testified he asked for a blood test. The People denied that any request at all was made on the third occasion; as to the first two, the evidence was that defendant was told that he could have a test at his own expense. In any event, defendant was neither misled, nor put in a position to be misled. (54 Cal.2d at pp. 759-760.) In Martin, defendant was arrested for driving while under the influence of intoxicating liquor, and, as noted above, made repeated efforts to secure a blood test, only to be thwarted by the police. (58 Cal.2d at pp. 510-511.) Accordingly, Martin, Koehne, and Newbern are distinguishable from the problem presented by the present cases.
We hold that, under the circumstances generally presented here, and in the absence of any evidence that a defendant knows he may be charged with being under the influence of a controlled substance, the conduct of the police in telling him he is charged with possession of a controlled substance on the police theory that the defendant is in “internal possession” of such a substance, will support a trial court finding that a defendant has been misled to his prejudice and thus has been deprived of due process or speedy trial rights. Even if a defendant does know that he is suspected of, or may be charged with being under the influence of a controlled substance, other circumstances may also support such a finding.
If the facts of our cases fit these legal shoes, the trial courts were warranted in dismissing the actions. Each case must be looked at in relation to its own circumstances. We proceed to discuss them individually.
People v. Reese—Crim. A. No. 14044
Reese was arrested on the evening of July 2, 1975, and told that the charge was possession of heroin. He was released on July 6, when he posted bail. At that time he was given a slip of paper entitled “Bail Receipt & Notice to Appear” which indicated that the charge against him was “11350 H & S,” an obvious reference to section 11350 of the Health and Safety Code dealing with the felony offense of possession of heroin. On the same slip of paper, Reese was instructed to appear in division 30 of the municipal court on July 11, 1975. When he did appear there, he was told by an officer in the courtroom that the charges against *1048 him had been dismissed. Actually, it appears that no charges had ever been filed. Within two weeks after he was released, Reese received a letter telling him to report to the municipal court on July 28, 1975 for arraignment on a charge of being under the influence of an opiate.
In a declaration filed in support of his motion to dismiss, he stated that it was not until July 28 that he was “officially informed for the first time” of the nature of the charge.
In granting Reese’s motion to dismiss upon the ground that he had been denied due process of law, the court ruled that Reese had been deprived of the right to procure witnesses and evidence supporting his innocence. The trial court’s finding of prejudice is a factual one. If supported by substantial evidence we should sustain it.
In this case, we cannot do so on the ground that Reese was denied the opportunity to promptly give a urine specimen and have it analyzed. The trial court found as a matter of fact that he was offered the opportunity to submit to a urine test and refused it. That finding is supported. The record of this case contains a Los Angeles Police Department document entitled “Admonishment For Under The Influence Of An Opiate Urine Test.” It is reproduced below.[6]
*1049 If a defendant refuses the opportunity to take a test he cannot later claim a violation of his due process rights. In re Newbern (1961) 55 Cal.2d 508, 511 [11 Cal.Rptr. 551, 360 P.2d 47]: “The testimony of the prosecution’s witnesses sufficiently established that the defendant was afforded a reasonable opportunity to obtain a timely sampling of his blood in the manner required by law . . . The availability of such an opportunity is all that due process requires in the preservation of an accused’s rights . . . .” Under these circumstances, Reese’s due process rights were not violated by any refusal to give him a urine test[7]
The next question is whether the evidence establishes that Reese was deprived of the opportunity to have a physician examine him within a reasonable time to determine, apart from urine specimens, whether he was under the influence of an opiate on the day arrested. His declaration in support of the motion to dismiss states that when his court-appointed counsel asked him on July 28, 1975, “whether I had seen a doctor or had blood or urine samples taken within 14 days after my arrest,” he replied that “I didn’t know that I was being charged with anything, I couldn’t afford a lawyer and that I didn’t know how to prepare for a defense on the crime charged.” There is nothing in this statement (and no other evidence touches on this subject) to indicate that the booking practice challenged here in any way misled Reese. The order of the trial court in this case thus cannot be upheld on the ground of the challenged police booking practice alone.
Nevertheless, the trial court reasonably could infer that if Reese had not been told that charges against him were dismissed, and had been *1050 arraigned on the charge of being under the influence of an opiate at an earlier date, counsel would have instructed him to have a medical examination at a time when it might have produced useful results. This factual finding of prejudice from delay binds us and justified dismissal. (Jones v. Superior Court, supra, 3 Cal.3d 734, 741.) The judgment (order) appealed from must be affirmed.
People v. Johnson—Crim. A. No. 13985
This defendant was arrested on December 13, 1974, about 11 a.m. She was released that day on bail and was told to report for a felony arraignment—possession of a controlled substance—on December 20, 1974. Her testimony is ambivalent as to what she was told while in jail on December 13, 1974, about the reason for her arrest. She testified both that she was told that she was arrested for being under the influence and for possession of heroin. She also testified that she asked a police officer, “Don’t they have some kind of test that you can give people to see if they had heroin?” and that the officer remained silent.
She reported to the arraignment court on the date instructed. She was told that no charge had been filed and that she could go home. A misdemeanor complaint charging her with being under the influence of a controlled substance was filed on December 16, 1974, but it was not until late Januaiy 1975, that she was told by the city attorney to appear for arraignment. She was arraigned in February 1975. The trial court ultimately granted her motion to dismiss on the ground that Penal Code section 825[8] had been violated because of the delay in arraignment between December 16, 1974, and February 10, 1975.
The motion to dismiss was argued on the ground that defendant’s rights had been prejudiced under the principle of Rost v. Municipal Court (1960) 184 Cal.App.2d 507 [7 Cal.Rptr. 869, 85 A.L.R.2d 974]. In granting the motion, the court stated that it was “satisfied under the facts of this case, [that] the defendant has been materially prejudiced by the events that occurred.” The statement on appeal points out that in defendant’s testimony she was unable to point to any specific manner in *1051 which delay caused her prejudice. It also refers, however, to medical testimony offered in the case concerning the need for prompt physical examination and specimen taking.
Here the evidence would support a finding that defendant had been told on the day of her arrest that she was suspected of being under the influence of an opiate. Yet, she was released from jail with instructions to appear for felony booking, was then told that no charge had been filed and that she could go home.
The trial judge had the right to draw the inference that from the jailer’s failure to respond to her question concerning the giving of a specimen and from her release on bail to face arraignment for possession of heroin, it was confirmed in defendant’s mind that proof (by a medical examination or otherwise) that she was not under the influence was unnecessary. Under these circumstances, the judgment (order of dismissal) must be affirmed.
People v. McCormick—Crim. A. No. 14153
Defendant was arrested on July 19, 1975, and booked for possession of heroin. While in jail on that date, he was presented with, and signed, the same Los Angeles Police Department form discussed above (fn. 6), agreeing to a urine test. A specimen was taken. Police medical reports subsequently showed that the results of the test were positive. A sample of the specimen was turned over to a defense laboratory which also detected morphine in defendant’s urine. Defendant was released on July 23, 1975, without any charge having been filed.
The record does not indicate when the positive results of the test became known.[9] The misdemeanor complaint was filed on August 14, 1975, and defendant was not arraigned until September 15, 1975. His declaration stated that it was not until that date that he was aware he was charged with being under the influence. Defendant also stated that had he been arraigned within 48 hours of his arrest he would have given a urine sample and submitted to a doctor’s examination at the request of his attorney, both of which procedures he believed would have exon era t *1052 ed him. The trial court granted a motion to dismiss on the ground that the delay had prejudiced defendant. The trial court said, in essence, that the police action had lulled defendant to sleep and that defendant had been prejudiced, stating “he [the defendant] is arrested and he knows that he did not have in his physical possession any narcotics, and he is released from custody. So he thinks—at least it would seem reasonable to think that he is home free, so to speak, to use that term, that he is not going to be complained against. H So, theoretically, if he were inclined to try to obtain evidence in his defense on being under the influence, there would be at least some justification for his argument that since he believed that he would not be prosecuted for the offense that then he just ignored it and didn’t go out and try to get any evidence in his own defense.” The court found prejudice in the fact that defendant had the right to go to a doctor of his own selection and have that doctor take his urine or his blood and go to court and testify for him. The court held that such right was denied him.
The facts in this case clearly militate strongly in favor of the People insofar as the giving of a urine specimen is concerned. As noted above, a reasonable opportunity to obtain a timely specimen is all that due process requires in the preservation of an accused’s rights in that respect. (In re Newbern, supra, 55 Cal.2d 508, 511.)
Yet, there is something to be said for defendant’s argument that given the timely analysis of urine, a medical examination of defendant’s person would have been the only way that he could have explained or impeached the apparent findings of the urinalysis. The lulling factor here is the release of the defendant without any charges having been filed. That apparently is the reasoning adopted by the trial court. We cannot say that it is factually unsupported. Prejudice being shown, the judgment (order) of dismissal must be affirmed.
People v. Bailey—Crim. A. No. 14246
Defendant was arrested on Saturday afternoon, May 22, 1975, and was told that the charge was possession of heroin. Defendant was not arraigned on a misdemeanor charge until three days later at approximately 11:30 a.m. It was stipulated that defendant was not offered a urine test while he was in police custody. In granting a motion to dismiss the court criticized the police practice of charging “internal possession,” “knowing full well that you are never going to get a filing for internal *1053 possession.” The court held that by the time defendant did get to arraignment it was too late to take a urine test and “the best practice” would be to charge the defendant with using and being under the influence of a controlled substance and then to offer him a test.
The defense motion to dismiss was granted on the ground that defendant was denied due process because he was not offered a urine test; the court held that he was not afforded an opportunity to prepare a vital defense through conduct of the arresting agency.
While, unlike the prior cases, this defendant had the opportunity to consult a doctor well within the time that a physical examination might enable the physician to testify that defendant displayed no symptoms of having injected a controlled substance, the misleading information given him as to the nature of the charge, plus the failure of the police to tell him about, or offer him a urine test, support the finding of prejudice. The judgment (order of dismissal) must be affirmed.
People v. Session—Crim. A. No. 14324
Defendant was arrested at 5:15 a.m. on Friday, November 21, 1975, and was told that he was being arrested for possession of heroin. He was booked on that charge. He remained in custody until the time of his arraignment on November 25, 1975, at 11:15 a.m., a complaint charging him with being under the influence of an opiate having been filed on November 24, 1975. It was at the arraignment that he was informed for the first time that he was being charged with being under the influence of an opiate. While in custody at the police station, defendant was asked by a police officer if he wanted to take a urine test. He said that he would take it but “nothing happened thereafter ... they just walked away.”
The trial court granted his motion to dismiss on the ground that defendant was prejudiced first, by the failure to give him the test after it was offered and second, by a failure to have him arraigned promptly “so that the effect of a urine test would be ineffectual.”
The court also stated that defendant’s arraignment was not within the time required. In that, the court was in error. It is clear that defendant was arraigned well within the time requirement of Penal Code section 825. (People v. Santos (1972) 26 Cal.App.3d 397, 403 [102 Cal.Rptr. 678]; People v. Lee (1970) 3 Cal.App.3d 514, 521 [83 Cal.Rptr. 715].)
*1054 The question remains whether the record shows enough prejudicial delay to constitute a violation of defendant’s right to a speedy trial or deprivation of due process.[10] A declaration filed by counsel in support of the motion stated that a urine analysis had to be conducted within 72 hours in order to be effective and would have been taken by attorneys of the public defender’s office if offered within that time and if the defendant was willing to supply the sample. The finding of prejudice is supported for the same reasons as in People v. Bailey, discussed above.

Disposition

The judgments (orders) are affirmed in each case.
Marshall, P. J., and Alarcon, J., concurred.

By stipulation or testimony the record in some of the cases here considered establishes 21 days as the outside date in which an expert would be able to determine from the examination of puncture wounds or scabs whether a person was under the influence of heroin on the date of arrest; a urine specimen must be taken within 72 hours after ingestion of an opiate in order to detect the presence of an opiate in the suspect’s system.

The arresting agency in each case.

The matters set forth in the foregoing two sentences were stipulated to in People v. Reese, Crim. A. No. 14044, one of the cases with which this opinion is concerned. In People v. Johnson, Crim. A. No. 13985, another of the cases, a police officer testified that he had been instructed “that we did not seek felony-filings on internal possession of heroin” and that he knew at the time that Johnson was booked for possession of heroin that in all likelihood no felony complaint would be filed against her and that of the two or three thousand cases known to the officer, felony charges were not filed and misdemeanor charges were filed. At the time that Johnson was booked for possession of heroin the officer who arrested her and charged her with that offense was not of the belief that she had any heroin other than that “internally possessed.” While the stipulations made in Reese were not made in the other cases, the People were parties in each action and the same arresting and prosecuting agencies were involved. No reason appears why the stipulation should not bind the People in all cases.

No. positive justification for the delay has been attempted by the People in any of the cases here under consideration. They have simply argued that the police are under no affirmative duty to procure evidence deemed necessary to the defense of the accused and they have pointed to the fact that it is the prosecuting attorney, not the police, who determines the nature of the charge to be filed. With respect to the latter argument, we note that it makes little difference to a defendant whether it is a police department, as the representative of the People, a prosecuting attorney, as the representative of the People, or both agencies in combination, whose conduct operates to deprive him of the opportunity to procure evidence favorable to his defense. In either case it is conduct of the government which in the aggregate, represents the People.

As will be seen, in some of the cases under review the assumption is unwarranted.

 "LOS ANGELES POLICE DEPARTMENT ADMONISHMENT FOR UNDER THE INFLUENCE OF AN OPIATE
URINE TEST
“DEFENDANT: REESE, GEORGE THOMAS BOOKING NUMBER 347133
You have the right to remain silent and to consult with an attorney prior to any questioning about the charges. You do not have a constitutional right to refuse to provide a urine sample for chemical testing. You do not have the right to talk to an attorney or to have an attorney present&emdash;prior to providing a urine sample or while providing a urine sample. Urine samples are physical evidence, taken when a violation of ‘Under the Influence Of An Opiate’ is suspected. The results of the sample so provided can be used against you in a court of law.
Do you understand what I have just explained to you (Response) YES
You are being charged with Section 11350 of the Health and Safety Code and I want you
to give a urine sample for the purposes of analysis.
Do you understand? (Response) YES
If you refuse, or fail, to give the sample for the purposes of analysis as requested, the fact that you refused can and will be commented on in a court of law.
Do you understand? (Response)' YES
If you are in fact innocent, the sample will aid in your defense.
Do you understand? YES
Do you agree to provide a urine sample at this time? (Response) NO
SIGNATURE George Reese
With an understanding of what has just been explained, do you still refuse to give the *1049 urine sample? (Response) YES
SIGNATURE George Ree.\e
DATE AND TIME 7-3-75 0120
REPORTING OFFICER MUTZ, J.P. SERIAL # 20871”

Nothing said here should be taken as an approval of the police department form in question. (See fn. 6.) It is hopelessly confusing. It first states that “urine samples are physical evidence, taken when a violation of ‘Under the Influence Of An Opiate’ is suspected” and then states “You are being charged with Section 11350 of the Health and Safety Code [possession of a controlled substance] and I want you to give a urine sample for the purposes of analysis.” The nature of the charge is thus ambiguously expressed, at best. The form is also probably inaccurate. Section 11552 of the Health and Safety Code states, “In any case in which a person has been arrested for a criminal offense and is suspected of being addicted to a controlled substance, a law enforcement officer háving custody of such person may, with the written consent of such person, request [a] . . . health officer or physician ... to administer ... [a] test to determine . . . whether the arrested person is addicted . . . .” If the test given here was taken pursuant to the authority of that statute, the statement that failure to consent to giving a sample “can and will be commented on in a court of law” is erroneous. (People v. Zavala (1966) 239 Cal.App.2d 732 [49 Cal.Rptr. 129].)

Section 825 provides in relevant part as follows; “The defendant must in all cases be taken before the magistrate without unnecessary delay, and, in any event, within two days after his arrest, excluding Sundays and holidays; provided, however, that when the two days prescribed iherein expire at a time when the court in which the magistrate is sitting is not in session, such time shall be extended to include the duration of the next regular court session on the judicial day immediately following.”

The People speculate that there was a delay in filing the misdemeanor complaint until August 14, 1975, for “A probable, and highly commendable, reason ... that, rather than charging the Defendant with a serious crime before consulting all available evidence, the decision was made to wait until the urine test results were obtained before filing the complaint.”

As noted above, the legal approach is the same. (Jones v. Superior Court, supra, 3 Cal.App.3d 734, 741, fn. 1.) Defendant’s motion to dismiss here was made not only on the ground of Penal Code section 825, but also “for denial of a fair trial and due process.”