Opinion
STEVENS, J.
—Appellant was convicted of being under the influence of narcotics. (Health & Saf. Code, § 11550.) He appeals claiming the trial court should have granted his motion to suppress.
Facts
Appellant was arrested for driving while addicted to a drug. (Veh. Code, § 23105, subd. (c).) His speech was thick. His balance was impaired. There were 29 fresh puncture wounds on his arms. He admitted that he had been “chipping.” While he was being detained at the police station, Officer Johnson said:
“You are suspected of using a controlled substance. We request you to furnish us with a sample of your urine to determine the presence or absence of any controlled substance in your system. Will you give us a sample of your urine?”
*Supp. 8 “For our analysis, we request 40 cc of urine. If, at a later date, you or your counsel wish an independent analysis, you should provide a total of 80 cc. Do you understand what I have just explained to you?”
Appellant said, “yeah” and provided the officers with the requested sample. Appellant did not give his written consent.
A chemist analyzed the sample and concluded that appellant had morphine in his system. He was then charged with being under the influence of a controlled substance. Incidentally, he was never charged with driving while addicted.
Issue
Appellant contends that section 11552 of the Health and Safety Code requires that written consent be given before such a test may be administered. Thus, the issue before us is a narrow one: Where a person under arrest is suspected of being under the influence of a controlled substance, must the officers secure his written consent before securing a urine sample?[1]
Discussion
1. The Text of the Statute.
Section 11552 of the Health and Safety Code provides: “In any case in which a person has been arrested for a criminal offense and is suspected of being addicted to a controlled substance, a law enforcement officer having custody of such a person may, with the written consent of such a person, request the city or county health officer, or physician appointed *Supp. 9 by such health officer, pursuant to Section 11151 [of the Health & Safety Code], to administer to the arrested person a test to determine, by whatever means is [sic] available, whether the arrested person is addicted to a controlled substance, and such health officer or physician may administer such test to such arrested person.” (Italics added.)
This section, which was enacted in 1972, replaced section 11723 of the Health and Safety Code, which was first enacted in 1959. The only significant difference is that the earlier statute specified that the health officer could use a “synthetic opiate antinarcotic in action.” The present statute permits the officer to use any test.
2. Section 11552 of the Health and Safety Code does not apply when the suspect is simply suspected of being under the influence of a . controlled substance.
Persons who are addicted to narcotics, or in imminent danger of being addicted, are subject to civil confinement so they can be treated. (See Welf. & Inst. Code, §§ 3000, 3051, 3100, 3100.6.) The term “addict,’’.and the phrase “in imminent danger of being addicted” have well defined meanings. (See People v. Victor (1965) 62 Cal.2d 280, 301-304 and fn. 17 [42 Cal.Rptr. 199, 398 P.2d 391]; People v. O’Neil (1965) 62 Cal.2d 748, 754 [44 Cal.Rptr. 320, 401 P.2d 928, 17 A.L.R.3d 806]; People v. Bruce (1966) 64 Cal.2d 55, 61-62, 64-65 [48 Cal.Rptr. 719, 409 P.2d 943]; People v. Murphy (1969) 70 Cal.2d 109, 121-122 [74 Cal.Rptr. 65, 448 P.2d 945].)
Conversely; one who is under the influence of a controlled substance is subject to prosecution. (Health & Saf. Code, § 11550.) The term “under the influence” as used in that section refers to the presence of physical symptoms of the unlawful use of a controlled substance “in any detectable manner.” (People v. Davis (1966) 240 Cal.App.2d 496, 501 [49 Cal.Rptr. 663].)
While a person found to be under the influence of a controlled substance may be subject to prosecution, it does not necessarily follow that he is in imminent danger of being addicted. A person is not in imminent danger of being addicted merely because he has begun to experiment with drugs. (People v. Victor 62 Cal.2d 280, 304 [42 Cal.Rptr. 199, 398 P.2d 391], See e.g., People v. Elmore (1969) 272 Cal.App.2d 864 [77 Cal.Rptr. 721] (commitment reversed where the only evidence was that defendant was under the influence and had fresh puncture wounds on his arms).)
*Supp. 10 On the other hand, while a person may be in imminent danger of being addicted, even though the test results are negative, and defendant is not experiencing withdrawal symptoms, (People v. Bruce, supra, 64 Cal.2d 55, 61-62), the use proscribed by section 11550 is a current use, not some use in the past. (People v. Velasquez (1976) 54 Cal.App.3d 695, 699-700 [126 Cal.Rptr. 656].)
In enacting section 11552 of the Health and Safety Code, the Legislature employed the term “addict.” It did not use the phrase, “under the influence of a controlled substance.” We must give significance to each word actually employed in a statute and may not rewrite the statute in the guise of construing it. (Code Civ. Proc., § 1858; Moyer v. Workmen’s Compensation Appeals Board (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].)
When Section 11552 of the Health and Safety Code was enacted, we can safely assume that the Legislature knew the difference between an addict and one who was simply under the influence of a controlled substance. (Estate of McDill (1975) 14 Cal.3d 831, 839 [122 Cal.Rptr. 754, 537 P.2d 874], See also People v. O’Neil, supra, 62 Cal.2d 748, 756, fn. 11.) The Legislature was also undoubtedly aware that section 11723, the earlier statute, was held to come “into play only where a person has been arrested for a criminal offense and is suspected of being a narcotic addict.” (People v. Zavala, supra, 239 Cal.App.2d 732, 739.) Since the Legislature retained the word, “addict” in the statute, we conclude that the Legislature did not intend to require written consent from a person who was simply suspected of being under the influence of a controlled substance. (See People v. Curtis (1969) 70 Cal.2d 347, 355 [74 Cal.Rptr. 713, 450 P.2d 33]; Estate ofMcDill, supra, 14 Cal.3d 831, 837-838, 839.)[2]
*Supp. 11 3. The test was properly administered by an officer who suspected appellant was under the influence of a-controlled substance.
Appellant also argues that inasmuch as he was arrested for driving while addicted to a drug, the officer must have believed that he was an addict. Therefore, he argues that written consent was required. We disagree.
By its terms, the statute applies whenever a person is arrested for a criminal offense and the person is suspected of being addicted to a controlled substance. Since no particular offense is specified, it is immaterial whether the arrest was for possession of heroin or driving while under the influence of a controlled substance.
The legislative policy underlying the enactment of this statute is stated in terms of the concern for the rehabilitation of addicts and the prevention of continued addiction to controlled substances. (Health & Saf. Code, § 11554; People v. Zavala, supra, 239 Cal.App.2d 732, 737.) By its terms, Section 11552 of the Health and Safety Code requires written consent only when the test is being administered for the purpose of determining whether the person is addicted to a controlled substance.
In this case, the officer stated that he suspected that appellant was under the influence of a narcotic and wished a sample for the purpose of determining the presence of a controlled substance in his system. There was no suggestion that the officer’s statement was untrue. (See People v. Rios (1975) 52 Cal.App.3d Supp. 6, 10-11 [124 Cal.Rptr. 626].) We must, therefore, uphold the trial court’s implied finding that the test was administered simply to determine whether appellant was under the influence of a controlled substance. (People v. Rios (1976) 16 Cal.3d 351, 357 [128 Cal.Rptr. 5, 546 P.2d 293].)
The judgment is affirmed.
Westwick (J. A.), P. J., and Rickard, J., concurred.

 Given the fact that consent need not be manifested in any particular way (People v. James (1977) 19 Cal.3d 99, 113 [137 Cal.Rptr. 447, 561 P.2d 1135], and the statute does not provide that evidence secured by other means should be inadmissible (See People v. Rawlings (1974) 42 Cal.App.3d 952, 956 [117 Cal.Rptr. 651]; People v. Puccinelli (1976) 63 Cal.App.3d 742 [135 Cal.Rptr. 534]), we invited the parties to tell us why the exclusionary rule should have any application when a suspect voluntarily urinated in a bottle!
Counsel for the People, with his customary candor, replied that he did not advance this theory in the trial court. (See Lorenzana v. Superior Court (1973) 9 Cal.3d 626, 640-641 [108 Cal.Rptr. 585, 511 P.2d 33].) He reminded us that one court assumed that the exclusionary rule would apply where the officers failed to secure the suspect’s written consent to a Nalline test. (See People v. Zavala (1966) 239 Cal.App.2d 732, 739 [49 Cal.Rptr. 129] (construing the previous statute on the subject).) In light of this concession, we will merely inquire whether the statute requires written consent where the person is suspected of being under the influence of a controlled substance.

 As a practical matter, appellant’s construction of the statute would produce bizarre results.
For instance, it has been held that officers are not required to take affirmative action to secure evidence for the defense. (See e.g., People v. Macknic (1967) 257 Cal.App.2d 370, 373-374 [64 Cal.Rptr. 833] (defendant need not be advised that he may take a Nalline test); Kesler v. Department of Motor Vehicles (1969) 1 Cal.3d 74, 78-79 [81 Cal.Rptr. 348, 459 P.2d 900] (a person who refuses a blood alcohol test need not be told that he may take a test at his own expense.) However, since a chemical analysis of urine is relevant where one is charged with being under the influence of a controlled substance, officers cannot refuse to honor a reasonable request for such a test. (People v. Johnson (1976) 62 Cal.App.3d Supp. 1, 3, 7, 17-18 [133 Cal.Rptr. 123].)
Suppose appellant had orally requested the test and the results proved positive. Under appellant’s interpretation of the statute, the results would be inadmissible since no written consent was given.