[Crim. No. 3304. Fifth Dist. June 2, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
ALEX SARKISSIAN, Defendant and Appellant.

**COUNSEL**

Charles B. Flood III and Walter L. Gorelick, Public Defenders, and James T. Wilson, Deputy Public Defender, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Joel E. Carey and Arthur G. Scotland, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**FRANSON, J.—**

### STATEMENT OF THE CASE

This appeal was transferred to this court for hearing and decision following certification by the Appellate Department of the Superior Court of Tulare County pursuant to rule 63 of the California Rules of Court. The issue to be decided is whether a person charged with being under the influence of narcotics as proscribed by Health and Safety Code section 11550 has a statutory right to refuse to provide a urine sample to establish his ingestion of narcotics. The answer to the question turns upon the applicability of Health and Safety Code section 11552, which provides that if a person has been arrested for a criminal offense and is suspected of being addicted to a narcotic, he may not be administered a test to determine whether he is addicted without his written consent.

■ We conclude that the applicability of section 11552 turns upon the giving of a test to determine addiction. In the absence of medical authority or evidence that addiction can be determined by urine testing, the request for a urine sample is not within the statute. As a consequence, the appellant did not have the right to refuse to furnish the urine sample, and his refusal may be used against him at trial.

The agreed statement of facts shows the following: appellant was arrested for public intoxication. During the booking procedure Officer Vossler noted that appellant's eyes were glassy and pupils constricted. The officer saw a two-inch long track mark on the back of appellant's left hand. He described the tracks as old marks but noted two fresh needle marks in the thumb area. Appellant told the officer that he had moved to Porterville to "clean up" and that he had been "strung out" on heroin while living in San Diego. Appellant was then charged with being under the influence of a controlled substance (heroin) in violation of Health and Safety Code section 11550.

On four occasions Officer Vossler asked appellant for a urine sample. Appellant refused. The jury was told of appellant's refusal to furnish a

urine sample. The district attorney argued to the jury that appellant's refusal indicated a consciousness of guilt. The jury found appellant guilty.

## DISCUSSION

■ Preliminarily, we note that a defendant has no constitutional right to refuse to submit to scientific tests of bodily characteristics or functions such as fingerprinting, voice identification, saliva tests, hair samples, and blood and breath tests, provided the taking of the sample is not done in a manner which shocks the conscience or offends one's sense of justice. (*Schmerber* v. *California* (1966) 384 U.S. 757 [16 L.Ed.2d 908, 86 S.Ct. 1826]; *Rochin* v. *California* (1952) 342 U.S. 165 [96 L.Ed. 183, 72 S.Ct. 205, 25 A.L.R.2d 1396]; *People* v. *Zavala* (1966) 239 Cal.App.2d 732, 738-739 [49 Cal.Rptr. 129].) The rationale is that the taking of the sample does not involve testimonial compulsion. ■ By analogy a defendant has no constitutional right to refuse to give a urine sample to determine whether he has ingested narcotics.

Appellant concedes the constitutional point but nevertheless argues that he has a statutory right under Health and Safety Code section 11552 to refuse to furnish a urine sample. Health and Safety Code section 11552, enacted in 1972, provides as follows: "In any case in which a person has been arrested for a criminal offense and is *suspected* of being addicted to a controlled substance, a law enforcement officer having custody of such person may, with the written consent of such person, request the city or county health officer, or physician appointed by such health officer pursuant to Section 11551, to administer to the arrested person *a test to determine, by whatever means is available whether the arrested person is addicted to a controlled substance,* and such health officer or physician may administer such test to such arrested person." (Italics added.)

Section 11552's predecessor was section 11723, which was similar except that it provided upon his written consent the person arrested may be administered a test to determine, "by means of use of a synthetic opiate antinarcotic in action" whether the arrested person is an addict. Section 11723 was enacted in 1959. At that time, former Health and Safety Code section 11721 made the status of narcotic addiction a criminal offense.

Two cases have construed the import of the written consent statute. In *People* v. *Zavala, supra,* 239 Cal.App.2d 732, defendant was convicted of unlawful possession for sale of heroin found in his apartment. The trial court allowed testimony and comment on the defendant's refusal to submit to a "Nalline"[1] test to show a consciousness of guilt on the issue of the defendant's knowledge of the presence of the heroin in his apartment and its narcotic character. In holding the admission of this evidence to have been error, the court concluded that section 11723 created a statutory right of refusal to submit to the test. It held that the right of refusal would be nullified if the fact of refusal were admitted into evidence against the defendant. The court also said that the enactment of the statute " 'must be accepted as a legislative mandate that the Nalline test has probative value' " on the question of addiction. (*Id.,* at p. 737, citing *People* v. *Williams* (1958) 164 Cal.App.2d Supp. 858, 862 [330 P.2d 79].)

*Zavala* does not discuss the standard to be used in determining when an arrestee is suspected of addiction. In one sense any person charged with using or being under the influence of a narcotic might be suspected of addiction; yet we know that a person may use drugs occasionally and even associate with addicts without being addicted. For this reason the law distinguishes between use and addiction. (See *People* v. *Victor* (1965) 62 Cal.2d 280, 301-304 [42 Cal.Rptr. 199, 398 P.2d 391].) Persons who are addicted to narcotics cannot be criminally prosecuted for their addiction but are subject to civil confinement for treatment. (*Robinson* v. *California* (1962) 370 U.S. 660 [8 L.Ed.2d 758, 82 S.Ct. 1417]; Welf. & Inst. Code, § 3000 et seq.)

In *People* v. *Mendoza* (1977) 76 Cal.App.3d Supp. 5 [143 Cal.Rptr. 404], the appellate department of the superior court held that section 11552 did not apply when a subject is simply suspected of being under the influence of a controlled substance. The court did not consider the fact that the defendant had been arrested for driving while addicted (Veh. Code, § 23105, subd. (c)) to indicate that the officer believed he was addicted.

---

[1]Nalline (N-allynormorphine) is a synthetic opiate that counteracts the physiological actions of morphine, heroin, and related compounds. The Nalline test consists of a subcutaneous injection of the drug and subsequent measurement of the pupils of the eyes. In a person who has been using opiates occasionally but is not addicted, the pupils will remain unchanged in size. In a person who is addicted, the diameters of the pupils will increase in size from 0.5 to 2 millimeters, depending upon the degree of addiction. There also may be withdrawal symptoms such as gooseflesh, yawning, nausea, and vomiting. (See Comment, *Nalline as an Aid in the Detection and Control of Users of Narcotics* (1960) 48 Cal. L. Rev. 282, at p. 293, cited in *People* v. *Zavala, supra,* 239 Cal.App.2d 732, 739.)

The officer testified that the defendant was told at the police station that he was suspected of using a controlled substance, and he was requested to furnish a urine sample to determine the presence of a controlled substance in his system. The defendant consented and furnished a sample; however, he did not give his written consent.

In holding the defendant's written consent was not a prerequisite to admitting the urine test results into evidence, the *Mendoza* court emphasized the distinction between persons addicted to narcotics and those who simply use narcotics. It concluded that section 11552 requires written consent only when the test is being administered for the purpose of determining whether the person is addicted. Since the officer had testified that he only suspected the defendant to have been under the influence of narcotics, it necessarily followed that the statute did not apply.

To the extent *Mendoza* holds that the applicability of section 11552 turns on the officer's subjective belief concerning the arrestee's condition, the decision is questionable. For example, if a known addict is arrested for being under the influence of heroin, under the *Mendoza* standard the statute can be avoided if the officer testifies that he suspected only that the arrestee was under the influence of heroin. ■ The applicability of a statute designed to protect addicts from involuntary testing for their addiction should not depend solely upon the officer's testimony as to his suspicion about the defendant's addiction. Rather, an objective standard should be applied: whenever an officer knows of facts which would lead a reasonable person to believe that the arrestee is an addict, any testing to determine addiction requires the arrestee's written consent. Pragmatically, it can be presumed from a request to test for addiction that the officer had reasonable cause to suspect addiction.[2]

■ *Mendoza* also assumes that a urine test will determine addiction. Yet, unlike the Nalline test, we have been cited to no medical authority that a urine test can determine addiction, nor does the record in the present case support such a finding. As a consequence, we conclude that a urine test is not within the intendment of section 11552, and therefore

[2]A persuasive argument can be made that since the status of addiction is no longer criminal (*Robinson* v. *California, supra,* 370 U.S. 660), and since the Nalline test has fallen into desuetude, section 11552 is an anachronism. Nevertheless, until the Legislature repeals the statute, it must be enforced and given a reasonable and common sense interpretation.

appellant's written consent to the furnishing of the urine sample was not required.

The judgment is affirmed.

Brown (G. A.), P. J., and Hopper, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 27, 1978.