*393
 
 Opinion
 

 GOOD, J.
 
 *
 

 The plaintiffs appeal from a judgment dismissing their complaint after a general demurrer was sustained without leave to amend. The complaint sought actual and punitive damages for an alleged usuiy. In brief, it was alleged: Union Commerce Bank, an Ohio banking corporation, offered to lend plaintiffs $1,912,000 for construction of an office building in the San Jose area with interest at
 
 8Vi
 
 percent on funds as drawn during a 24-month construction period ending Februaiy 8, 1975, plus a 2 percent loan fee; that the offer provided for permanent long-term financing after completion. Among the conditions of Union’s offer was the proviso that a California lending institution acceptable to it should participate in the loan for at least 10 percent and that the loan and all documents connected with it would be closed in the California agency and be subject to Union’s approval. Barclays of California became the participating California institution for 25 percent and the note ($1,912,500) and deed of trust were executed in favor of Barclays. In December 1974, some seven weeks before due date, plaintiffs requested a six-month extension because the permanent financing then available to them was disadvantageous. Union wrote Barclays in January 1975 that it would approve the extension conditioned, among other things, upon payment of interest at 11
 
 Vi
 
 percent and payment of a fee of $9,562,50.. Plaintiffs accepted these terms and paid the fee with the increased interest for some ten months when the loan was paid off.
 

 It was further alleged that the terms of the extension were usurious because they were in excess of the maximum rate allowed by article XX, section 22, of the California Constitution.
 
 [1]
 
 Additional causes of action charged that Barclays and Union conspired together to effect the usurious extension terms because Barclays was exempt as a California bank while Union was not; and further conspired to use the permanent financing commitment as leverage to coerce plaintiffs’ acceptance of the extension. Charges of oppressive and malicious conduct were leveled and, in addition to $140,035.89 (extension interest and fee), which was sought to be trebled, punitive damages of $750,000 were sought.
 

 
 *394
 
 The dispositive issue is whether or not Union, as an Ohio bank, is within the exemption provision of the Constitution which, after setting legal interest at 7 percent, authorizes a rate not to exceed 10 percent in writtén contracts, prohibits interest in excess of said rate and then provides: “However, none of the above restrictions shall apply to any . .. bank as defined in and operating under that certain act known as ‘Bank Act,’ approved March 1, 1909, as amended, or any bank created and operating under and pursuant to any laws of this State or of the United States of America . .. Plaintiffs concede that Barclays is an exempt bank defined in the Bank Act of 1909, which since 1951 has been incorporated into division 1 of California’s Financial Code as “the Banking Law” to which all code sections below cited will refer. (See § 99.)
 

 “Bank” is defined in section 102 as “any incorporated banking institution which shall have been incorporated to conduct the business of receiving money on deposit, or transacting a trust business as herein defined.” The narrow compass of the definition indicates that the Legislature’s primary concern has been with the security of the funds of depositors. However, the section does not differentiate between domestic and foreign banking corporations and is broad enough to include both.
 

 Foreign banking corporations are regulated by chapter 14 of division 1 of said Financial Code. Section 1750 reads: “A foreign corporation shall not engage in the banking or trust business in this State unless it is licensed to do so and unless it first complies with all of the provisions of this chapter and then
 
 only to the extent expressly permitted
 
 in this chapter. In transacting such business a foreign corporation shall comply with all applicable provisions of this division and of the laws of this State.” (Italics added.) After several licensing and regulatory sections, section 1756 specifies the kind of business expressly permitted to foreign corporations: “(a) A foreign corporation which is authorized by license under Section 1754 may transact in this state the business of buying, selling, paying, or collecting bills of exchange, of issuing letters of credit, of receiving money for transmission by draft, check, cable or otherwise, and of making loans.” The remainder of the section is not relevant to the issue at hand. But section 1757 then provides: “Nothing in this chapter shall be deemed to prohibit a foreign banking corporation which does not maintain an office in this State for the transaction of business from making loans in this State secured by mortgages on real property . .. .”
 
 *395
 
 The sections of the Banking Law above quoted derive from the Bank Act of 1909 as it had been amended in 1913, 1917 and 1923, and so far as relevant herein, were in effect in 1934 and 1976 when the constitutional provision was approved by the electorate. Pursuant to section 2 (Fin. Code), they are to be “construed as reinstatements and continuations” of the 1909 Bank Act “and not as new enactments.”
 

 There is a manifest inconsistency between the categorical and unambiguous prohibition of a foreign banking corporation from engaging in business in California unless it is licensed and has complied with the other regulations of the Banking Law “and then only to the extent expressly permitted” therein (§ 1750 and the express permission for specified transactions contained in § 1756) and the implied approval of (“Nothing in this chapter shall be deemed to prohibit . ..”) a foreign bank’s making a loan in California secured by real property as contained in section 1757. This inconsistency and the resulting ambiguity in status of a foreign bank making a loan so secured must be resolved in order to ascertain the meaning of the constitutional language exempting a bank “defined in and operating under” the Banking Law from the usury law.
 

 It is a cardinal rule of statutory construction that where statutes are inconsistent and deal with the same subject matter, they miist be construed with reference to the whole system of law of which they are part so that all may be harmonized and be given effect. It is presumed that the Legislature does not indulge in idle acts and that a statute is to have some effect.
 
 (Stafford
 
 v.
 
 Realty Bond Service Corp.
 
 (1952) 39 Cal.2d 797, 805 [249 P.2d 241].) (3) Further, whatever is necessarily implied in a statute is as much a part of it as that which is expressed.
 
 (Charles S.
 
 v.
 
 Board of Education
 
 (1971) 20 Cal.App.3d 83, 94 [97 Cal.Rptr. 422];
 
 Johnston
 
 v.
 
 Baker
 
 (1914) 167 Cal. 260, 264 [139 P. 86].) With these rules in mind, it is our opinion that section 1757 precludes application of the requirements of section 1756 to a foreign bank which makes a loan in California secured to real property and must be read as an express permission for the transaction of such business. The intent of section 1757 appears to have been to encourage and facilitate a flow of foreign capital into California.
 

 We do not accept defendant’s argument that the complaint with its incorporated documentation established that the loan was made solely by Barclays, the sole payee and beneficiary of the note and trust deed. The complaint charged that the form of the transaction was a device to
 
 *396
 
 evade the Constitution’s usury prohibitions. If that allegation were proved, Union, at least, would be liable unless it was within the constitutional exemption. “[S]ubstance not form must dictate the treatment that a transaction is to be accorded under the usury law, and the question of substance is predominately a factual inquiry.”
 
 (Glaire
 
 v.
 
 La Lanne-Paris Health Spa, Inc.
 
 (1974) 12 Cal.3d 915, 927 [117 Cal.Rptr. 541, 528 P.2d 357].)
 

 We find no case wherein a similar charge of Usury is made. In discussing relationships between exempt and nonexempt lenders, one writer speculated: “Finally, suppose that the non-exempt lender procures a loan and submits it to an exempt lender. The latter acts as a lender solely for the purpose of permitting the non-exempt lender to avoid the usury law. Absent authority on this point, it is reasonable to assume that the courts could find the benefits derived from the transaction by the non-exempt lender to be usurious.” (See Comment,
 
 Comprehensive View of California Usury Law
 
 (1974) 6 Sw.U.L.Rev. 166, 182.) Nor do we find a case which interprets the language of the Constitution’s exemption of a “bank as defined in and operating
 
 under
 
 [the] . . . ‘Bank Act,’ approved March 1, 1909, as amended.” (Italics added.) But the only definition of the seemingly simple word “under” that can have meaning in the context of the constitutional phrase is found in Webster’s Third New International, 8a: “required by : in accordance with : bound by.”
 

 The article in question was drafted by the Assembly and submitted to the electorate in 1934. It was resubmitted as article XV in 1976 in the same language. We may assume that the Legislature had in mind the definitions and regulations it had enacted in the Banking Law as well as judicial decisions which involved them. It has been held that one of the purposes of the constitutional amendment as proposed in 1934 was to confer power upon the Legislature to regulate interest rates that may be charged by exempt lending agencies and limit the rates thereof whenever it was deemed necessary or appropriate.
 
 (Carter
 
 v.
 
 Seaboard Finance Co.
 
 (1949) 33 Cal.2d 564, 581 [203 P.2d 758].) It is most unlikely in the prevailing difficult economic conditions of 1934 that the Legislature intended to depart from the policy reflected in section 1757 or to impede the investment of foreign capital in this state by constitutional amendment. In the context of the Banking Law provisions and the language of the Constitution, there is substance to the trial judge’s comment that, if the Legislature had intended to differentiate between categories of sister-state banks lending money upon the security of real property, it
 
 *397
 
 could have done so in clear and unambiguous language. We conclude that insofar as section 1757 of the Banking Law authorizes the transaction in question for a foreign bank and exempts it from the requirements of section 1756, Union was operating in accordance with the provisions of California law and was, therefore, a bank defined in and operating under our Banking Law.
 

 The judgment is affirmed.
 

 Draper, P. J., and Scott, J., concurred.
 

 Appellants’ petition for a hearing by the Supreme Court was denied August 11, 1977.
 

 *
 

 Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.
 

 [1]
 

 After the June 1976 election, article XX, section 22. dealing with usury was replaced by article XV which is identical with the formersection. The change was made to avoid the awkwardness of the Constitution’s containing two articles bearing the same number but dealing with disparate subjects.