[Crim. No. 32539. Second Dist., Div. Four. Nov. 17, 1978.]

THE PEOPLE, Plaintiff and Appellant, v.
PETER LAWRENCE VALENZUELA, Defendant and Respondent.

428

COUNSEL

John K. Van de Kamp, District Attorney, Donald J. Kaplan, Richard W. Gerry and Suzanne Person, Deputy District Attorneys, for Plaintiff and Appellant.

Wilbur F. Littlefield, Public Defender, Dennis A. Fisher, Rita H. Harris and H. Reed Webb, Deputy Public Defenders, for Defendant and Respondent.

## OPINION

FILES, P. J.—Appeal from an order dismissing a misdemeanor prosecution upon the ground that the defendant was not arraigned promptly after his arrest as required by Penal Code section 825. The appellate department affirmed, and, pursuant to rule 62, California Rules of Court, we ordered transfer of the case.

Defendant was arrested at 7:29 p.m. on Thursday, October 13, 1977, for being under the influence of a controlled substance, a misdemeanor violation of Health and Safety Code section 11550. He was arraigned the following Monday, October 17.

At that time the public defender was appointed counsel for defendant and a plea of not guilty was entered. Counsel for defendant filed a written notice of motion to dismiss the complaint for failure to arraign him without unnecessary delay in violation of Penal Code sections 825 and 849, subdivision (a). After a hearing, the motion was granted and the complaint was dismissed.[1]

Defendant did not offer any evidence in support of his motion. The People called the arresting officer who testified to the following effect:

The defendant was arrested at 7:29 p.m. on Thursday, October 13, 1977. Neither the arresting officer nor any other officer offered the defendant any kind of chemical test for the presence of narcotics in his system. The defendant did not request such a test.

The officer's shift on Thursday was from 4 p.m. to midnight. He did not prepare his arrest report until the following day, and it was typed at 8:55 p.m. on Friday, October 14.

---

[1]The October 17, 1977, entry in the docket of the municipal court contains this language: "825 P.C. motion to dismiss is granted. Case dismissed per sec. 1382 Penal Code."

We interpret the reference to section 1382 as a clerical error which may be disregarded. The settled statement gives no indication that the court relied upon section 1382, which does not speak of delay prior to the filing of a complaint.

The settled statement contains this explanation for the dismissal: "Since the defendant was not offered nor given the opportunity to get a urine test within a 72-hour period that this was a denial of due process and that the defendant was prejudiced by the delay in arraignment in that the defendant was not given an opportunity to present a defense."

The pertinent part of Penal Code section 825 is "The defendant must in all cases be taken before the magistrate without unnecessary delay, and, in any event, within two days after his arrest, excluding Sundays and holidays; provided, however, that when the two days prescribed herein expire at a time when the court in which the magistrate is sitting is not in session, such time shall be extended to include the duration of the next regular court session on the judicial day immediately following."

Subdivision (a) of section 849 states: "When an arrest is made without a warrant by a peace officer or private person, the person arrested, if not otherwise released, shall, without unnecessary delay, be taken before the nearest or most accessible magistrate in the county in which the offense is triable, and a complaint stating the charge against the arrested person shall be laid before such magistrate."

The record supports the finding that the delay in arraigning defendant was unnecessary. The People do not dispute this. It is inferable that if the arresting officer had prepared and turned in his written report before going off duty on Thursday evening, the arraignment could have taken place on Friday rather than the following Monday. The critical issue here is whether, on the record made in the trial court, that delay justified a dismissal of the complaint.

■ The dismissal was not authorized by any California statute. Neither sections 825 nor 849 contain any language authorizing or requiring a dismissal of a prosecution by reason of delay in arraignment. Statutes on the subject of dismissal (Pen. Code, §§ 1381, 1381.5, 1382, 1389) require dismissal for certain delays after the arraignment or the commencement of the proceeding, but do not cover delay prior to arraignment or the commencement of the proceeding.

The failure of the arresting officer to do the paperwork necessary to cause the complaint to be filed at an earlier time reflects against the legality of the detention, rather than the legality of the subsequent prosecution. ■ Ordinarily, an illegal detention is not, by itself, a ground for a dismissal of charges. (*In re Walters* (1975) 15 Cal.3d 738, 753

[126 Cal.Rptr. 239, 543 P.2d 607]; *People* v. *Bradford* (1969) 70 Cal.2d 333, 344 [74 Cal.Rptr. 726, 450 P.2d 46].)

Dismissal of a criminal prosecution before trial on the ground of delay in arraignment is apparently a rare occurrence, as we have found no decisions of the Supreme Court or Courts of Appeal growing out of such a case.

In *People* v. *Morse* (1970) 4 Cal.App.3d Supp. 7 [84 Cal.Rptr. 703], the appellate department of the superior court reversed a municipal court order which had dismissed a misdemeanor charge on account of a lapse of six days between arrest and arraignment. The appellate court concluded (at pp. 9-10) that "whatever other remedies may be available to a defendant whose arraignment is unduly delayed, immunity from prosecution is not one of them."

In arriving at this conclusion the *Morse* court found an analogy in *People* v. *Wilson* (1963) 60 Cal.2d 139 [32 Cal.Rptr. 44, 383 P.2d 452], and other cases holding that delay was not ground for reversal of the conviction without a showing of prejudice.

■ When prearraignment delay is urged as a ground of reversal after conviction, the applicable rule is that stated in *People* v. *Combes* (1961) 56 Cal.2d 135, 142 [14 Cal.Rptr. 4, 363 P.2d 4]: "A violation of a defendant's right to be taken before a magistrate within the time specified by the law does not require a reversal unless he shows that through such wrongful conduct he was deprived of a fair trial or otherwise suffered prejudice as a result thereof."

The rule has been cited without challenge in subsequent decisions. In *People* v. *Wilson, supra,* 60 Cal.2d 139, 153-154, the court used the *Combes* rule as an analogy in a discussion of post arraignment delay. The *Combes* statement was cited and followed in *People* v. *Vick* (1970) 11 Cal.App.3d 1058, 1068 [90 Cal.Rptr. 236], and as an alternate ground of decision in *People* v. *Hill* (1967) 66 Cal.2d 536, 551 [58 Cal.Rptr. 340, 426 P.2d 908]; *People* v. *Stewart* (1968) 264 Cal.App.2d 809, 814 [70 Cal.Rptr. 873], and *People* v. *Norman* (1967) 252 Cal.App.2d 381, 392 [60 Cal.Rptr. 609].

A dismissal would not remedy the officer's error or redress the prearraignment detention. An automatic grant of immunity to the suspected offender would be nothing but a reprisal against the public at

large for the officer's neglect. This is a sanction which our courts have declined to impose for illegal or excessive detention. (See, e.g., *People* v. *Bradford, supra,* 70 Cal.2d 333, 344.)

■ We therefore turn to the issue of prejudice. The language of the *Combes* decision indicates a burden upon the defendant to produce evidence of prejudice: "A violation . . . does not require a reversal unless he shows . . . prejudice as a result thereof." (56 Cal.2d at p. 142.)

No evidence was offered by either side except the testimony of the arresting officer to show the absence of good cause for his delay in writing up his arrest report. Defendant's contention in the trial court and on appeal is that the delay in arraignment deprived him of the opportunity to obtain a chemical test which would have established his innocence. In substance, defendant is asking this court to take judicial notice that he would have taken steps to obtain a test if his arraignment had taken place on Friday, but that he could not have done so effectively on or after the Monday arraignment.

We can take judicial notice that a chemical test may produce evidence of the presence or absence of the effects of a controlled substance in the body, and that over a period of time the effect dissipates so that the test loses its validity. (See *In re Newbern* (1959) 175 Cal.App.2d 862, 866 [1 Cal.Rptr. 80, 78 A.L.R.2d 901]; *People* v. *Johnson* (1976) 62 Cal.App.3d Supp. 1, 7 [133 Cal.Rptr. 123].) But we cannot go as far as defendant requires to establish prejudice in this case.

There is no showing that defendant requested a chemical test (as did *Newbern,* for example). We do not know whether his failure to make such a request on Thursday evening or thereafter was due to ignorance, or a preference that no chemical test be made. On this record it is a matter of speculation whether the defendant would have sought such tests if he had been advised of them, or whether he had reason to expect that a test would have been helpful to him. For example, if defendant was aware that he had recently ingested some substance which was likely to give a positive test reaction, he may not have desired to submit to a test. The record does not show that defendant requested a test on Monday; nor does it show whether or not a test of blood taken on Monday would have had validity as evidence of nonuse on the previous Thursday.

Thus there was nothing in the record which would support any finding by the municipal court that the delay in arraignment had prejudiced defendant.

The order of dismissal is reversed.

Kingsley, J., concurred.

**JEFFERSON (Bernard), J.**—I dissent.

I shall discuss two matters in connection with the case before us although the majority opinion deals with only one of these matters. One issue involved in this case concerns the issue of whether there was prejudice to the defendant resulting from the delay in his arraignment. The second matter, which is not dealt with in the majority opinion, involves the issue of the legality of rule 977 of the California Rules of Court—discussed at considerable length in the opinion of the Appellate Department of the Los Angeles Superior Court—but not discussed by the majority in the case before us.

I

*The Trial Court Was Correct in Dismissing the*
*Complaint Against Defendant Because of the*
*Delay in Arraignment*

The facts are not in dispute in this case. The defendant was arrested on Thursday, October 13, 1977, for the offense of being under the influence of narcotics in violation of Health and Safety Code section 11550. Without having any excuse for the delay, the arresting officer did not complete his arrest report until after 4 p.m. the following day, Friday, October 14, 1977, with the typed report not being completed until approximately 9 p.m. that same evening. Defendant was not arraigned until the following Monday, October 17, 1977, four days after his arrest, upon a complaint which charged that on October 13, 1977, defendant had committed a violation of Health and Safety Code section 11550 by being under the influence of a controlled substance, to wit, opiates. There is no dispute, therefore, that defendant could have been arraigned on Friday, October 14, the day following his arrest.

It is the view of the majority that, although a delay in defendant's arraignment constitutes a violation of Penal Code section 825, which requires an arraignment following an arrest "without unnecessary delay," such delay did not justify a dismissal of the complaint against defendant.

For its holding that the delay in defendant's arraignment did not justify a dismissal of the complaint, the majority relies upon the statement found in *People* v. *Combes* (1961) 56 Cal.2d 135, 142 [14 Cal.Rptr. 4, 363 P.2d 4]: "A violation of a defendant's right to be taken before a magistrate within the time specified by the law does not require a reversal unless he shows that through such wrongful conduct he was deprived of a fair trial or otherwise suffered prejudice as a result thereof." I agree with the majority that an automatic dismissal of a complaint because of an unjustifiable delay in arraignment has not been a remedy approved by our appellate courts.

However, I disagree with the majority's interpretation of *Combes* that, in order for a defendant to be entitled to a dismissal of the complaint because of an unjustifiable delay in arraignment, there is a burden cast upon the defendant to *produce evidence* of prejudice resulting from such delay. It is my interpretation of *Combes* that a *showing* of prejudice can be made without the production of evidence by a defendant.

In the case before us, no evidence was offered by either the prosecution or the defendant other than the testimony of the arresting officer which established an absence of good cause for his delay in writing up his arrest report. The majority rejects the defendant's contention that the delay in arraignment deprived him of the *opportunity* to obtain a chemical test which might have established his innocence of the charge against him. The majority's view that the burden was upon defendant to *produce evidence* to establish prejudicial effect of the delay in arraignment is unacceptable and not required by the principle set forth in *Combes*. The majority reasons that it would be a matter of speculation whether the defendant before us would have sought some chemical test, if he had been arraigned promptly, in an effort to establish that he was not under the influence of opiates as charged by the prosecution.

Chemical tests for the presence of narcotics in the human body are known and accepted as reliable. This explains the basis for Health and Safety Code section 11551, subdivision (a), which provides, in relevant part, that "[w]henever any court in this state grants probation to a person who the court has reason to believe *is* or has been a user of controlled substances, the court may require as a condition to probation that the probationer submit to periodic tests by a city or county health officer, or by a physician and surgeon appointed by the city or county health officer with the approval of the Attorney General, to determine, *by whatever*

*means is available,* whether the probationer is addicted to a controlled substance."[1] (Italics added.)

It is my view that the question of prejudice to a defendant when there has been an unjustifiable delay in arraignment should impose no greater burden upon the defendant than is imposed upon a defendant who is seeking the identity of an informer. The rule is well settled that a defendant is entitled to disclosure of the identity of an informer if he demonstrates a reasonable *possibility* that the informer *could* give testimony on the issue of defendant's innocence which *might* result in his exoneration. Under this rule, although more than mere speculation is required, the defendant does *not* have the burden of proving that the informer *would* give testimony in his favor. (See *People* v. *Borunda* (1974) 11 Cal.3d 523 [113 Cal.Rptr. 825, 522 P.2d 1]; *People* v. *Goliday* (1973) 8 Cal.3d 771 [106 Cal.Rptr. 113, 505 P.2d 537].)

And in *People* v. *Tolliver* (1975) 53 Cal.App.3d 1036 [125 Cal.Rptr. 905], it was held that a defendant is not required to specifically articulate a theory of defense in order to secure a disclosure of the identity of an informer. The *Tolliver* court held that, if from the prosecution's evidence alone, there appeared a reasonable *possibility* of favorable testimony by an undisclosed informer, the defendant was entitled to disclosure even though he has not articulated a specific theory of defense. The failure of the prosecution to provide disclosure of an informer's identity in these situations creates the result that a defendant is entitled to have the action dismissed against him on the ground that he has been denied his due process right to a fair trial.

In the case at bench, it is my view that the defendant was not required to introduce any evidence to establish prejudice from the unjustifiable delay in arraignment under Penal Code section 825 any more than a defendant is not required to introduce evidence to establish his right to disclosure of the identity of an informer who might possibly give evidence tending to establish defendant's innocence.

The situation presented in the case at bench is not unlike that found in *People* v. *Johnson* (1976) 62 Cal.App.3d Supp. 1 [133 Cal.Rptr. 123]. In *Johnson,* a defendant was arrested on December 13, 1974, on suspicion of possession of a controlled substance and also for being under the

[1]The synthetic opiate antinarcotic test—nalline—is one test commonly used for detection of a person's use of narcotics. (See Cal. Admin. Code, tit. 17, §§ 2710-2711; Comment (1960) 48 Cal.L.Rev. 282.)

influence of heroin. According to her testimony, she was released on bail the same day of her arrest. Three days later, December 16, 1974, she was charged with the misdemeanor of being under the influence of a controlled substance. Her motion to dismiss the complaint on the ground that Penal Code section 825 had been violated because of the delay in arraignment was granted. It appears that she was not actually arraigned until February 10, 1975.

In *Johnson,* in connection with her motion to dismiss the complaint, the defendant testified that she asked a police officer on the date of her arrest: " 'Don't they have some kind of test that you can give people to see if they had heroin?' " (*Johnson, supra,* 62 Cal.App.3d Supp. 1, 14), and that the officer remained silent. In upholding the order of dismissal, the *Johnson* court reasoned that the defendant had been misled into thinking that proof, by medical examination or otherwise, that she was *not* under the influence of a controlled substance, was unnecessary.

The *Johnson* court stated that, in a case in which a defendant is charged with being under the influence of a controlled substance—an opiate—in violation of section 11550 of the Health and Safety Code, "[i]t is highly relevant, in the defense of such a case, for the defendant to prove his innocence through medical evidence that his body did not exhibit symptoms of such usage. Such evidence may consist of chemical analysis of a urine specimen taken within a limited time after the alleged date the offense was committed. It may also consist of testimony of a doctor concerning the results of a physical examination covering such matters as the presence or absence of scab marks on a defendant's limbs, body movements, gait, eye response and state of consciousness. It does not take medical school training or law enforcement experience to be aware that in time such circumstances disappear or fade away." (*Johnson, supra,* 62 Cal.App.3d Supp. 1, 5; fn. omitted.)

In the case at bench, the majority's suggestion that defendant had a duty to request the police to give him a scientific test of some kind to establish that his body was free of opiates cannot be squared with defendant's constitutional due process right to a fair trial. Similarly, the majority's espousal of a rule that requires a defendant to assume the burden of producing evidence and proving that, had he been arraigned promptly—the next day after his arrest—he would have had such a test conducted, constitutes a rejection of elemental notions of fairness to a criminal defendant that are inherent in the due process concept of the right to a fair trial. I consider that the instant case represents a clear and

convincing demonstration of the denial of due process rights to a fair trial when the unjustifiable delay in arraignment precluded the defendant from being afforded an *opportunity* to present the defense that his body was free of the controlled substance—opiates—on the crucial date of his arrest.

This view is supported by the holding of *In re Newbern* (1959) 175 Cal.App.2d 862, 865 [1 Cal.Rptr. 80, 78 A.L.R.2d 901], dealing with the question of the presence of alcohol in the body, in which the court stated: "[W]hen, in the exercise of their power to arrest, the police deprived the arrested person of the opportunity to obtain evidence that might establish his innocence, they are suppressing it just as effectively as if it did exist and they withheld it."

The legal principle which ought to be applied in the case before us is cogently recognized in *Johnson* by the statement: "Whether the question is approached under due process principles or those relating to the denial of the right to speedy trial makes no difference. The question in each case is '. . . decided by the same approach, namely, balancing the effect of the delay on the defendant against any justification for the delay.' (*Jones* v. *Superior Court* (1970) 3 Cal.3d 734, 741, fn. 1 [91 Cal.Rptr. 578, 478 P.2d 10].)" (*Johnson, supra,* 62 Cal.App.3d Supp. 1, 7.)

It is readily apparent that had defendant been arraigned on Friday, the day following his arrest, the public defender would have been appointed to represent him, and a decision could have been made to have an appropriate test and examination of defendant conducted to secure evidence that would tend to establish defendant's innocence of the charge of having been under the influence of opiates the preceding day. It is the deprivation of this *opportunity* to obtain evidence of a defense that makes the delay in arraignment in the instant case a denial to defendant of his due process rights to a fair trial and of his right to a speedy trial. This is the teaching of the principles set forth in *Jones, supra,* 3 Cal.3d 734; *Newbern, supra,* 175 Cal.App.2d 862; *Johnson, supra,* 62 Cal.App.3d Supp. 1; *Borunda, supra,* 11 Cal.3d 523; *Goliday, supra,* 8 Cal.3d 771; and *Tolliver, supra,* 53 Cal.App.3d 1036.

That the *denial* to defendant of an *opportunity* to obtain evidence in his favor becomes the key consideration in the determination that he has been deprived of due process rights to a fair trial is reflected in the Supreme Court's analysis of a defendant's right to a scientific test to determine the presence of alcohol in the blood when the charge relates to

this fact. In *In re Koehne* (1960) 54 Cal.2d 757, 759 [8 Cal.Rptr. 435, 356 P.2d 179], the court commented that "it is only when he is *denied an opportunity,* reasonable under the circumstances, to procure a timely sample of his blood that he can properly claim a denial of due process. . . ." (Italics added.)

## II

### *The Validity of Rule 977 of the California Rules of Court*

This case is before us pursuant to our order transferring the cause to this court for hearing and decision, based upon our determination from the opinion of the appellate department—certified for publication—that the transfer was necessary to secure uniformity of decision and to settle important questions of law. (Cal. Rules of Court, rule 63(a).) We advised counsel that the issue justifying transfer was whether the record supported the trial court's order of dismissal. The transfer of the cause to us automatically vacated the opinion of the Appellate Department of the Los Angeles Superior Court, thereby presenting the issue of whether the record supports the municipal court's order dismissing the complaint against defendant. (Cal. Rules of Court, rule 976 (d).)

The district attorney has filed a supplemental brief relating to a portion of the superseded opinion of the Appellate Department of the Los Angeles Superior Court. The appellate department devoted a substantial portion of its opinion to a discussion of the validity of rule 977 of the California Rules of Court. Rule 977 provides: "An opinion of a Court of Appeal or of an appellate department of a superior court that is not published in the Official Reports shall not be cited by a court or by a party in any other action or proceeding except when the opinion is relevant under the doctrines of the law of the case, res judicata or collateral estoppel, or in a criminal action or proceeding involving the same defendant or a disciplinary action or proceeding involving the same respondent." (Fn. omitted.)

In the appellate department's opinion two of the three judges declared rule 977 to be "invalid" and proceeded to consider one of its own unpublished opinions which had been cited after the appellate department had given special permission for counsel to cite an unpublished opinion. The appellate department court then distinguished the unpublished opinion on its facts and held that it was not applicable to the present case.

A supplemental letter from the district attorney states that this is not the first case in which the Appellate Department of the Superior Court of Los Angeles County has authorized the citation of an unpublished opinion, contrary to rule 977. The district attorney asserts that this court has an "obligation" to express itself on the subject. Although we have no such *duty* as that suggested by the district attorney, I am of the opinion that it is appropriate for us to consider this issue since the appellate department saw fit to gratuitously discuss the matter in its opinion.[2]

It is true that when a higher appellate court takes over a case from a lower appellate court, the latter's opinion becomes vacated and the appeal is deemed to be from the trial court's judgment—not from the lower appellate court's opinion and holding—and the issues to be decided are solely those involving the correctness of the trial court's judgment from which the appeal was taken. But this doctrine of the vacation of a lower appellate court's opinion and the issues raised by such opinion has exceptions. Thus, in *People* v. *Rogers* (1978) 21 Cal.3d 542, 547 [146 Cal.Rptr. 732, 579 P.2d 1048], the court observed: "Because the granting of a hearing automatically vacates the opinion of the Court of Appeal [citations], we do not ordinarily discuss the reasoning of that opinion. We depart from our customary practice here because the *Harvey/Madden* issue was raised by the Court of Appeal, not by the parties." And in *Bloom* v. *Municipal Court* (1976) 16 Cal.3d 71 [127 Cal.Rptr. 317, 545 P.2d 229], the court made this statement: "The granting of a hearing automatically vacated the opinion of the Court of Appeal (Cal. Rules of Court, rule 976(d)), but because of its importance, we deem it appropriate to discuss the question raised by that court." (*Id.,* at p. 74, fn. 2.) Contrary to the view of the majority, I consider the issue of the validity of rule 977 of the California Rules of Court of sufficient importance to make it appropriate for me to discuss the question.

In my view, rule 977 is a valid rule. I consider the majority opinion of the appellate department to the contrary, to be erroneous and untenable. The appellate department opinion sets forth two reasons for its view of invalidity: (1) that rule 977 violates basic concepts of the doctrine of stare decisis; and (2) that rule 977 is contrary to the superior command of Civil Code section 22.2. Neither of these reasons is persuasive.

Rule 977 is intertwined with rule 976 which sets forth that all opinions of the Supreme Court shall be published in the Official Reports and those

---

[2]The third judge of the appellate department concurred in the result reached by the majority but disagreed with the majority's discussion and holding regarding the validity of rule 977 of the California Rules of Court.

opinions of the Courts of Appeal and of the appellate departments of the superior courts which conform to the requirements set forth in that rule. Rules 976 and 977 were adopted by the Supreme Court,[3] effective January 1, 1964, and since amended, pursuant to authority now contained in section 14 of article VI of the California Constitution, and in Government Code section 68902. Section 14 provides: "The Legislature shall provide for the prompt publication of such opinions of the Supreme Court and courts of appeal as the Supreme Court deems appropriate, and those opinions shall be available for publication by any person. [¶] Decisions of the Supreme Court and courts of appeal that determine causes shall be in writing with reasons stated." Section 68902 of the Government Code provides that "[s]uch opinions of the Supreme Court, of the courts of appeal, and of the appellate departments of the superior courts as the Supreme Court may deem expedient shall be published in the official reports. The reports shall be published under the general supervision of the Supreme Court."

It is to be noted that neither section 14 of article VI of the California Constitution nor Government Code section 68902 contains any reference to the legal effect to be given to the opinions ordered published or nonpublished by the Supreme Court. The question presented is—what is the authority for the Supreme Court to order the *noncitability* by court or party of *nonpublished* opinions?

It does not require extended discussion to reach the conclusion that rule 977 is required, or at least expedient, to make rule 976 effective. I need refer to only one of a number of reasons advanced to support the conclusion that the "noncite rule" (rule 977) is needed to make effective the selective publication rule (rule 976). Permitting the citation of unpublished opinions would create fundamental problems of unfairness between parties and their counsel who possess unlimited funds for research and those with very limited budgets. The "unfairness" argument is set forth in an opinion by a federal appellate court dealing with the status of its own unreported memorandum decisions. "We prefer that they [unreported memorandum decisions] not be cited to us for an additional reason: since they are unpublished and generally unavailable

---

[3]Rule 977 was also adopted as a rule of court by the Judicial Council. Article VI, section 6, of the California Constitution, Penal Code section 1247k and Code of Civil Procedure section 901 authorize the Judicial Council to make rules of court. Under this authority the council adopted rules 15 and 105 relating to the form and content of briefs on appeal. Since the citation of opinions is generally made in briefs, rule 977 necessarily relates to the content of briefs. Therefore, the Judicial Council joined with the Supreme Court in the adoption of rule 977.

to the bar, access to them is unequal and depends upon chance rather than research. For this reason, also, we will not ourselves in published opinions cite or refer to memorandum decisions." (*Jones* v. *Superintendent, Virginia State Farm* (4th Cir. 1972) 465 F.2d 1091, 1094.)

However, the fact that rule 977 serves as an effective aid to the usefulness of rule 976 does not tell us the legal basis for the Supreme Court's authority and power to promulgate rule 977. I find the Supreme Court's power and authority to create rule 977 in two sources. One is that of the constitutional and statutory provisions previously referred to as authorizing specifically the selective publication rule (rule 976): section 14 of article VI of the California Constitution and Government Code section 68902. We are not required to give statutes and constitutional provisions a literal interpretation when to do so will nullify legislative intent. (*In re Haines* (1925) 195 Cal. 605, 613 [234 P. 883].) It is obvious that the legislative intent undergirding the constitutional and statutory provisions referred to was to provide for the orderly development of the decisional law with due consideration to factors such as the expense, unfairness to many litigants, and chaos in precedent research, if all appellate opinions were required to be published, or, if those ordered to be nonpublished would have the same effect and precedent value as those which were published. To carry out the intent manifest in these constitutional and statutory provisions for selective publication of opinions, these provisions must be interpreted to include the power to preclude the use of nonpublished opinions as citable precedents.

This interpretation of the constitutional and statutory provisions involved comes within the generally accepted tenets of statutory construction and interpretation. It is a well-settled rule of statutory construction that "in enforcing the command of a statute, both the policy expressed in its terms and the object implicit in its history and background should be recognized." (*Shafer* v. *Registered Pharmacists Union* (1940) 16 Cal.2d 379, 383 [106 P.2d 403].) "Further, whatever is *necessarily implied* in a statute is as much a part of it as that which is expressed." (*Sondeno* v. *Union Commerce Bank* (1977) 71 Cal.App.3d 391, 395 [139 Cal.Rptr. 229].) (Italics added.)

Rule 977 is also a valid exercise of the authority and power of the Supreme Court by virtue of the principle that the Supreme Court possesses "inherent supervisory powers over the courts of this state" (*People* v. *Coleman* (1975) 13 Cal.3d 867, 872 [120 Cal.Rptr. 384, 533 P.2d 1024]), and may, in the exercise of such inherent supervisory powers, fashion rules "in the interest of the sound administration of justice." (*Id.*,

at p. 897.) The rule created in *Coleman* was an exclusionary rule of evidence in a subsequent criminal action for a probationer's testimony given at a prior probation revocation hearing—a rule not founded on any constitutional principle and created in spite of Evidence Code section 351, which makes all relevant evidence admissible "[e]xcept as otherwise provided by statute." The noncite rule—rule 977—is clearly a rule fashioned "in the interest of the sound administration of justice" as is the exclusionary evidentiary rule fashioned in *Coleman.*

## A. Rule 977 does not do violence to the concept of stare decisis

The appellate department's opinion reaches the conclusion that rule 977 violates the concept of stare decisis because the rule destroys the precedential value of unpublished opinions. It is stated in *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937], that "[u]nder the doctrine of *stare decisis,* all tribunals exercising inferior jurisdiction are required to follow decisions of courts exercising superior jurisdiction. Otherwise, the doctrine of *stare decisis* makes no sense. . . . Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction. It is not their function to attempt to overrule decisions of a higher court." (Italics in original.) Rule 977 does not conflict with the doctrine of stare decisis set forth in *Auto Equity Sales.* The doctrine of stare decisis is not mandated by any constitutional principle but is a rule of decisional law founded upon public policy in the interests of justice. As a rule of decisional law that carries out a sound public policy in the interest of sound administration of justice, the Supreme Court may pick and choose as to what opinions shall be given precedential value under the stare decisis doctrine.

As stated in *Jones, supra,* 465 F.2d 1091, 1094: "We concede, of course, that any decision is by definition a precedent, . . . But . . . we think it reasonable to refuse to treat them [unreported memorandum decisions] as precedent within the meaning of the rule of stare decisis." And in *Helvering* v. *Hallock* (1940) 309 U.S. 106, 119 [84 L.Ed. 604, 612, 60 S.Ct. 444, 125 A.L.R. 1368], our nation's highest court explained the policy limits of the stare decisis principle by observing: "We recognize that *stare decisis* embodies an important social policy. It represents an element of continuity in law, and is rooted in the psychologic need to satisfy reasonable expectations. But *stare decisis* is a principle of policy and not a mechanical formula of adherence to the latest decision, however recent and questionable, when such adherence involves collision with a prior doctrine more embracing in its scope, intrinsically sounder, and verified by experience."

Furthermore, the California Supreme Court was fully aware of its *Auto Equity Sales* decision when it promulgated rule 977—the noncite rule for nonpublished opinions. The *Auto Equity Sales* case was decided in 1962. Rule 977 was adopted by the Supreme Court, effective January 1, 1974. It is of significance that rule 977 recognizes the fundamental difference between the doctrine of stare decisis and other more compelling principles. Thus, rule 977 does not preclude the citation of a nonpublished opinion when such "opinion is relevant under the doctrines of the law of the case, res judicata or collateral estoppel, or in a criminal action or proceeding involving the same defendant or a disciplinary action or proceeding involving the same respondent."

B. *Rule 977 does not contravene Civil Code section 22.2*

The appellate department's opinion reaches the conclusion that rule 977 is invalid because it contravenes the provisions of Civil Code section 22.2 which provides: "The common law of England, so far as it is not repugnant to or inconsistent with the Constitution of the United States, or the Constitution or laws of this State, is the rule of decision in all the courts of this State." The thesis is advanced that *unpublished* opinions, along with published opinions, constitute *evidence* of what the common law is. "[J]udicial decisions do not themselves constitute the common law, but are merely evidence of the common law." (*Callet* v. *Alioto* (1930) 210 Cal. 65, 68 [290 P. 438].) Hence, it is suggested, the application of rule 977 to preclude reference to nonpublished opinions is violative of Civil Code section 22.2. This position is not well taken.

Civil Code section 22.2 does not give any guidance for the courts in determining the common law of England which is to be the rule of decision in all the courts of this state to the extent that this common law is not repugnant to the federal or state Constitution or the laws of this state. It is a decisional law development that has concluded that "in determining what the common law is, this court is not limited to a consideration of the English decisions, but can and should consider and weigh the reasoning of the courts of sister states." (*Callet, supra,* 210 Cal. 65, 69; see also *Forbes* v. *Scannell* (1859) 13 Cal. 242.) The decisional law rule which indicates what decisions may be looked to in seeking to find *evidence* of the common law is not laid in concrete. Civil Code section 22.2 did not mandate that the courts must examine every decision of the courts of this state for *evidence* of the common law. The Supreme Court—which is the ultimate creator of the decisional law of this state—is free to change the decisional law as it sees fit in the absence of constitutional or statutory

restraints. It thus was free, by the promulgation of rule 977, to limit the cases a party in court may cite as evidence of the common law to cases that are published in the official reports. The inability of a party to cite a nonpublished opinion as evidence of what constitutes the common law in no way contravenes the provisions of Civil Code section 22.2.

I would affirm the order of dismissal.

Respondent's petition for a hearing by the Supreme Court was denied February 14, 1979. Bird, C. J., was of the opinion that the petition should be granted.