[No. A033047. First Dist., Div. Four. Apr. 10, 1987.]

GAIL SCOZZAFAVA, Plaintiff and Appellant, v.
WILFRED H. LIEB, Defendant and Respondent.

**[Opinion certified for partial publication[1]]**

---

[1]Part I (only) is not published, as it does not meet the standards for publication contained in rule 976(b), California Rules of Court.

**COUNSEL**

Tom Thorner and Roth & Thorner for Plaintiff and Appellant.

Tarkington, O'Connor & O'Neill, Gregory P. Einhorn and Stephen F. O'Neill for Defendant and Respondent.

**OPINION**

**POCHÉ, J.**—In *Katsaris* v. *Cook* (1986) 180 Cal.App.3d 256 [225 Cal.Rptr. 531], this court held that section 31103 of the Food and Agricultural Code[2]

---

[2]Statutory citations are to the Food and Agricultural Code unless otherwise indicated. References to a "Rule" are to the California Rules of Court.

grants livestock owners a privilege to kill dogs wh ich have trespassed upon property where livestock is confined. On this appeal we consider the related issue of whether section 31103 and like statutes immunize a poultry owner whose employee shoots and wounds a trespassing dog which subsequently bites a veterinary assistant during the course of treatment of the dog's injuries. We conclude that the poultry owner is immune from liability.

BACKGROUND AND PROCEDURE

The events which gave rise to this litigation are simple and undisputed. Defendant Wilfred Lieb is the owner of a poultry farm situated within the city limits of the city of Novato. He employed Daniel Marrin, who lived on the premises, to tend and protect the poultry. On August 23, 1982, Marrin fired a shotgun at a dog which Marrin discovered on defendant's farm. The wounded dog returned to its owner, a Ms. Atkisson, who took it to the office of veterinarian Dennis Clifton. Dr. Clifton administered morphine and a tranquilizer preparatory to local surgery. About 20 minutes later the dog bit plaintiff Gail Scozzafava, Dr. Clifton's assistant, as she was attempting to pick it up.

Plaintiff commenced this action against defendant for negligence. Neither Ms. Atkisson nor Dr. Clifton was named as a defendant.[3] In his answer defendant pleaded affirmative defenses to the effect that "[t]he act of which plaintiff complains was privileged, and that plaintiff's complaint is barred by operation of" sections 31102, 31103, 31104, and 31152. After discovery was conducted by the parties, defendant moved to terminate the action by summary judgment. His first motion to this end was based on the immunity provisions specified in his answer, This was denied in July of 1984. The following month the trial court granted plaintiff's motion for summary adjudication that defendant was not immune from liability by reason of sections 31102 and 31152.

In April of 1985, defendant again moved for summary judgment, this time on a ground wholly unrelated to statutory immunity. This motion was granted and a summary judgment was entered in August of that same year. Plaintiff then perfected this timely appeal.

---

[3]Dr. Clifton was undoubtedly omitted because, as plaintiff's employer, her exclusive avenue of redress against him was payment by his worker's compensation carrier. (See Lab. Code, §§ 3600, 3601, 3602.) It is readily inferable from the Doe allegations of plaintiff's complaint that Marrin qualified as an unnamed defendant, although whether he was ever served with a copy of the complaint and a summons does not appear from the record. In any event, Marrin, Clifton, and Ms. Atkisson played no part in the summary judgment proceedings in the trial court. They are likewise not parties on this appeal.

Review

I[4]

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

II

Defendant has at various points in this litigation invoked the protection of all of the immunity statutes, to wit, sections 31102, 31103, 31104, and 31152.[5] He is, however, not entitled to claim each and all as germane to his situation. Section 31152 is not applicable because the board of supervisors has not adopted a resolution making its provisions effective within Marin County. (See § 31151, quoted in fn. 5, *ante*.) Section 31104 is also inapplicable. Section 31104 is not a substantive immunity source, but a limitation

---

[4]See footnote 1, *ante*.

[5]These statutes provide: "31102. Except in an area in which the provisions of Article 2 (commencing with Section 31151) of this chapter apply or as otherwise provided in Section 31104, any person may kill any dog in any of the following cases: [¶] (a) The dog is found in the act of killing, wounding, or persistently pursuing or worrying livestock or poultry on land or premises which are not owned or possessed by the owner of the dog. [¶] (b) The person has such proof as conclusively shows that the dog has been recently engaged in killing or wounding livestock or poultry on land or premises which are not owned or possessed by the dog's owner. [¶] No action, civil or criminal, shall be maintained for the killing of any such dog."

"31103. Except in an area in which the provisions of Article 2 (commencing with Section 31151) of this chapter apply or as otherwise provided in Section 31104, any dog entering any enclosed or unenclosed property upon which livestock or poultry are confined may be seized or killed by the owner or tenant of the property or by any employee of the owner or tenant. No action, civil or criminal, shall be maintained against the owner, tenant, or employee for the seizure or killing of any such dog."

"31104. The provisions of Section 31102 and 31103 shall not apply to any dog which is inside the corporate limits of any city, or city and county, or to any dog which is under the reasonable control of his owner or keeper, unless the dog is actually caught in the act of worrying, wounding, chasing, or killing any livestock or poultry."

"31152. Any person may kill any dog in any area of a county in which the provisions of this article apply in any of the following cases: [¶] (a) The dog is found in the act of killing, wounding, or persistently pursuing livestock or poultry on land or premises not owned or possessed by the owner of the dog. [¶] (b) The dog has no readily visible identification tag or license tag prescribed by Section 30951 and is worrying livestock or poultry on land or premises not owned or possessed by the owner of the dog. If the dog has on him any readily visible identification tag or license tag prescribed by Section 30951, and the dog is found in the act of worrying livestock or poultry on land or premises not owned or possessed by the owner of the dog, the dog may only be killed if the dog has, and the owner has been notified that the dog has, previously so worried livestock or poultry. [¶] (c) The person has such proof as conclusively shows that the dog has been recently engaged in killing or wounding livestock or poultry on land or premises not owned or possessed by the dog's owner. [¶] No action, civil or criminal, shall be maintained for killing a dog as authorized by this section."

Section 31151, which is mentioned in sections 31102 and 31103, reads: "The provisions of Sections 31102 and 31103 shall not apply in any area of a county in which the board of supervisors has provided, by resolution, that the provisions of this article apply."

upon the scope of the immunity granted by sections 31102 and 31103. Section 31104 is at the same time a reinforcement of a common thread found in sections 31102 and 31103—the privilege to kill a dog discovered while actually molesting livestock or poultry. Because, as will be shown, the dog which bit plaintiff was shot by plaintiff's employee Marrin when he discovered the dog chasing poultry on defendant's property, the issue before us is whether sections 31102 and 31103 preclude plaintiff recovering damages from defendant.

Defendant's showing on his initial motion for summary judgment consisted of declarations by himself and Marrin. As pertinent here,[6] defendant stated in his declaration as follows: "At the time of the events complained of in the complaint, I had an employee, Dan Marrin, who was charged with the responsibility of tending and protecting poultry on my farm. Mr. Marrin lived on the premises, in a house close to the chicken coup [*sic*] known as [the] 'brooding house' which was used to shelter newly hatched chicks. Beside the brooding house, there was a pen constructed of chicken wire attached to fence posts. . . . [¶] Over the many years I have operated this poultry farm, . . . I have had numerous problems with roving dogs . . . coming onto my property and killing my poultry. Before the date of this incident, I had instructed my employee to shoot any unlicensed dog he saw worrying or molesting the poultry."

Marrin stated in his declaration: "On or about the date of the incident complained of, shortly after waking, I heard a commotion in the brooding house, which indicated that an animal may have gotten into the house and was molesting the chicks. Upon investigation, I could see that a dog was in the brooding house and the pen area adjacent to it chasing chickens, and that the chickens were terrified and in danger of death by suffocation from their attempts to huddle into a corner to escape the dog. [¶] Upon seeing this, I took a shotgun which had been left for me by Mr. LIEB, and approached the pen. I took one shot at the dog, apparently striking him in the rear end. The dog then ran . . . . [¶] Before shooting, I got a good look at the dog, and . . . there was no collar or license on the dog at the time. [¶] Before the date of this occurrence, I had been instructed by my employer to shoot any unlicensed dog found worrying the poultry."

Our decision in *Katsaris,* which was filed approximately 20 months after defendant's initial summary judgment motion was denied, began its analysis

---

[6]Defendant's declaration includes statements concerning what Marrin told him about the shooting. Plaintiff objected in writing to these hearsay statements (see Code Civ. Proc., § 437c, subd. (b); Rules 343, 345), which have been disregarded. (Cf. *Hayman* v. *Block* (1986) 176 Cal.App.3d 629, 640 [222 Cal.Rptr. 293]; *Hoover Community Hotel Development Corp.* v. *Thomson* (1985) 167 Cal.App.3d 1130, 1133-1134 [213 Cal.Rptr. 750].)

by examining the purpose and effect of section 31103: "By enacting section 31103 the Legislature found the public's interest in protecting farm animals outweighed the dog owners' right to permit their animals to roam freely on land occupied by livestock. To promote the Legislature's goal, it gave live-stock owners, in section 31103, a privilege to kill or seize trespassing dogs." (*Katsaris* v. *Cook, supra,* 180 Cal.App.3d 256 at pp. 263-264 [fns. omitted].) We determined that the privilege was a qualified or conditional one which "protects the actor only if he acts for the purpose of advancing or protecting the interest which the privilege seeks to protect." (*Id.* at p. 265.) We concluded: "If the policy choice made by the Legislature in enacting section 31103 is to protect livestock owners from economic loss stemming from the death or injury of their animals, then arguably conduct by livestock owners which goes beyond what is necessary to protect their livestock from tres-passing dogs is not covered by the privilege. [¶] Any conduct necessary to the killing of a trespassing dog will be within the privilege. Decisions by the owner of livestock about when, where or how to kill a trespassing dog and dispose of its body, as well as the owner's delegation of those decisions to his employees, is conduct which comes within the privilege." (*Id.* at p. 266.)

*Katsaris* involved the actual killing of two dogs. It is thus not dispositive of this case, which involves only the wounding of a dog. Nevertheless, *Katsaris* developed an analytical framework that is instructive. The causes of action at issue in *Katsaris* were damages for the loss of the dogs themselves; negligence regarding the manner in which the livestock owners supervised the employee who killed the dogs and the owners' "permit[ting] guns to be kept and to be shot"; and intentional infliction of emotional distress for not advising the dogs' owner that they had been killed. The causes of action were scrutinized in light of chronological and functional criteria to determine whether they were barred by the privilege. Accordingly, if the claim involved "an act necessary to the killing," or "matters . . . intimately linked to the [dogs'] deaths," or "[i]f the factual basis of th[e] claim lies in the manner in which the defendants killed the dogs or disposed of their bodies, then the privilege . . . bars the claim." Likewise, "if the duty of care was breached by the shooting of the dogs, the claim is barred. . . ." (*Katsaris* v. *Cook, supra,* 180 Cal.App.3d 256 at pp. 266-267.) Conversely, "post shooting conduct" was excluded from the ambit of the privilege if not transactionally related to the shooting. (*Id.* at pp. 267-269.) When measured against these criteria, the damages and negligence causes were held to be barred by the privilege, whereas that for emotional distress was not.

Here, plaintiff's sole cause of action against defendant is for "negligence in the management of his chicken farm; in the selection, training, and super-vision of employees; and in the care, maintenance and use of firearms." All elements of this cause of action relate to the shooting and involve a "duty

of care [purportedly] breached by the shooting. . . ." No part of plaintiff's claim has any reference to any "post shooting conduct" by either defendant or Marrin. (See *Katsaris* v. *Cook, supra,* 180 Cal.App.3d 256 at pp. 266-267.) In short, plaintiff's cause of action rests on the shooting and nothing but the shooting.

■ There is no dispute that Marrin intended to kill the dog,[7] or that he fired only after discovering the dog actually molesting defendant's chickens in defendant's chicken coop on defendant's chicken farm. These circumstances satisfy the essential predicate for operation of sections 31102, 31103, and 31104. With the sole distinction that *Katsaris* dealt with the killing of dogs and this case involves only the wounding of a marauding dog, plaintiff's negligence claim is virtually identical to that in *Katsaris*. ■ The context of *Katsaris* makes it clear that the test of acts or conduct "necessary to the killing" is not rigidly limited to such obvious incidents as loading and aiming, but is instead generously construed so as to reach categories of specific decisions pertaining to more general areas such as employment practices, business policies, and most manner of matters concerning firearms. These are precisely the issues for which plaintiff seeks to impose liability on defendant. Just as we did in *Katsaris,* we hold that these acts and omissions constitute decisions necessary to the exercise of the privilege to kill.

■ Plaintiff struggles to avoid this conclusion by arguing that the privilege is confined by plain statutory language to killing of dogs, and thus has no bearing to an action for negligence in wounding a dog prosecuted by someone other than the owner of the dog. As plaintiff puts it: "Such a rule would make no sense for it would completely immunize a person from negligent or even reckless wounding of his neighbors in the course of trying to shoot a trespassing dog (even if he used a machine gun or a cannon)." Weaponry aside, this argument possesses undeniable force, but several considerations militate against accepting it here. ■ With respect to plaintiff's reliance on the language of sections 31102, 31103, and 31104, it is a standard canon of construction that "whatever is necessarily implied in a statute is as much a part of it as that which is expressed." (*Johnston* v. *Baker* (1914) 167 Cal. 260, 264 [139 P. 86]; accord *Lum* v. *Superior Court* (1983) 141 Cal.App.3d 952, 956 [190 Cal.Rptr. 599]; *Sondeno* v. *Union Commerce Bank* (1977) 71 Cal.App.3d 391, 395 [139 Cal.Rptr. 229]; *Charles S.* v. *Board of Education* (1971) 20 Cal.App.3d 83, 94 [97 Cal.Rptr. 422].) ■ Obedience to this principle leaves no choice but to recognize that a statutory privilege to kill necessarily reaches shooting intended to kill yet which does not result in death. ■ Although it is true that the privilege is a condi-

---

[7]Marrin so testified at his deposition, which was held one month after defendant filed his initial motion for summary judgment.

tional one subject to strict construction (see *Katsaris* v. *Cook, supra,* 180 Cal.App.3d 256 at pp. 265-266), it is nevertheless "[t]he rule that an express grant of power or right carries all incidental powers or rights necessary to carry the grant into effect provides one of the most common qualifications to the rule of strict interpretation." (3 Sutherland, Statutory Construction (Sands 4th ed. 1986) § 63.10, p. 164, fn. omitted.) As plaintiff's hypothetical illustration suggests, situations may indeed arise where conduct so unreasonable may require the privilege to be treated as lost through abuse. (See *Katsaris* v. *Cook, supra,* at p. 265.) This may be reserved for the future. ▮ For present purposes it suffices to conclude that the widely recognized privilege of a property owner to protect his livestock (see Prosser & Keeton on Torts (5th ed. 1984) § 21, pp. 136-137; 3A C.J.S. (1973) Animals, § 291, p. 810), as recognized in sections 31102, 31103, and 31104, was demonstrated by defendant to be a complete defense to plaintiff's action. Plaintiff having failed to establish the existence of a triable issue of material fact, defendant was entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 134 [211 Cal.Rptr. 356, 695 P.2d 653]; *Bass* v. *Pratt* (1986) 177 Cal.App.3d 129, 131-132 [222 Cal.Rptr. 723]; *Scott* v. *Farrar* (1983) 139 Cal.App.3d 462, 466 [188 Cal.Rptr. 823].)

The summary judgment is affirmed.

Anderson, P. J., and Channell, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 24, 1987.